**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COREENA M. ZERNHEL, | ) | CASE NO. 3:13-CV-00963 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Coreena M. Zernhel ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security

("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq.* ("Act").  This

case is before the undersigned United States Magistrate Judge pursuant to the consent

of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set

forth below, the Commissioner's final decision is REVERSED and REMANDED for

proceedings consistent with this opinion**.**

## I.    PROCEDURAL HISTORY

On October 27, 2009, Plaintiff filed applications for DIB, POD, and SSI and

alleged a disability onset date of September 26, 2009.  (Transcript ("Tr.") at 21.)  The

applications were denied initially and upon reconsideration, and Plaintiff requested a

hearing before an administrative law judge ("ALJ").  (*Id.*)  On September 13, 2011, an

ALJ held a video hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by

counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.

(*Id.*)  On October 18, 2011, the ALJ found Plaintiff not disabled.  (Tr. 18.)  On February

27, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's

decision became the Commissioner's final decision.  (Tr. 1.)  On April 29, 2013, Plaintiff

filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The

parties have completed briefing in this case.  (Doc. Nos. 17, 18, 19.)

Plaintiff asserts the following assignments of error: (1) the ALJ improperly

evaluated Plaintiff's need for a walker; and (2) the ALJ's residual functional capacity

finding does not adequately account for Plaintiff's mental limitations.

## II.   EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in July 1964 and was 45-years-old on her alleged disability

onset date.  (Tr. 31.)  She had a limited education and was able to communicate in

English.  (*Id.*)  She had past relevant work as a housekeeper and cashier.  (Tr. 30.)

### B.    Medical Evidence

#### 1.    Mental Limitations

##### a.    Medical Reports

Plaintiff has a long history of mental health treatment dating back to at least

1993.  (Tr. 436.)  On July 22, 1993, Jaylata Patel, M.D., diagnosed Plaintiff with post

traumatic stress disorder, adjustment disorder with mixed emotional features versus

major depressive disorder, and a history of alcohol abuse.  (Tr. 437.)

Plaintiff sought mental health treatment at Harbor Behavioral Healthcare, Inc.

2

On September 2, 2009, Chandan Nayak, M.D. diagnosed Plaintiff with dysthymic disorder and assessed a Global Assessment of Functioning (GAF) score of 56.[1]  (Tr. 445.)  On October 28, 2009, Dr. Nayak diagnosed dysthymic disorder, cocaine dependence, and attention deficit hyperactivity disorder (ADHD), predominately inattentive type.  (Tr. 440.)  A clinical progress note dated November 12, 2009, described Plaintiff's mood and affect as depressed, but noted "some improvement" regarding her progress.  (Tr. 438.)   In October 2009, Dr. Nayak completed a mental functional capacity assessment.  (Tr. 721.)  Dr. Nayak opined that Plaintiff did not have any mental limitations and that she was employable.  (*Id.*)

On December 3, 2009, Elizabeth Koenreich, LPCC, performed a diagnostic assessment of Plaintiff.  (Tr. 430.)  Plaintiff reported symptoms of depression that included feeling sad, overwhelmed, irritable, hopeless, increased tiredness and decreased motivation.  (*Id.*)  She also had symptoms of ADHD that included an inability to focus and being easily distracted.  (*Id.*)  Dr. Koenreich reported that Plaintiff's mood was depressed and her thought process was scattered, but that her thought content was appropriate, her intellect was average, and her judgment and memory were normal.  (Tr. 431.)  Dr. Koenreich diagnosed dysthymic disorder and ADHD.  (Tr. 431.)

In late January 2010, Plaintiff sought mental health treatment from Pretap Torsekar, M.D.  (Tr. 695.)  Dr. Torsekar reported that Plaintiff was alert, was

---

[1]     The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

cooperative, and had good judgment.  (Tr. 696.)  Plaintiff denied suicidal or homicidal

ideation, paranoid delusions, or obsessions/compulsions.  (*Id.*)  Dr. Torsekar diagnosed

cocaine dependence, ADHD, predominately inattentive type, and dysthymic disorder.

(Tr. 696-697.)  In an office visit note dated February 24, 2010, Dr. Torsekar noted that

Plaintiff was much calmer as compared to her last visit and was more agreeable with

his recommendations.  (Tr. 699.)  Progress notes from April 2010 indicate that Plaintiff

made "some improvement" regarding her progress.  (Tr. 709.)  On April 21, 2010, Dr.

Torsekar assessed Plaintiff with a GAF score of 52, consistent with a moderate

impairment in functioning.  (Tr. 712.)

   In April and June 2010, Plaintiff underwent intelligence testing by Melissa K.

Lanza, Ph.D.  (Tr. 714-718.)  The test results showed that Plaintiff was functioning in

the borderline range of intelligence.  (Tr. 716.)  Dr. Lanza noted Plaintiff's diagnoses of

dysthymic disorder, ADHD, alcohol dependence (sustained remission), cannabis

disorder, and borderline intellectual functioning and assessed Plaintiff with a GAF score

of 55.  (Tr. 716, 719.)

   Plaintiff continued to seek mental health treatment by Dr. Torsekar

approximately once per month from July 2010 through December 2010 and intermittent

counseling (varying from one to five times per month) at that time.  (Tr. 748-827.)  In

January 2011, Plaintiff was hospitalized for psychiatric reasons for six days.  (Tr. 727.)

Plaintiff was started on mood stabilizing and antidepressant medications.  (Tr. 730.)

She was involved in individual supportive therapy and hospital milieu and responded

well to that treatment regimen.  (Tr. 730-731.)  Plaintiff's discharge summary report

indicated that her mood improved significantly and her psychomotor activity had

4

improved.  (Tr. 731.)  According to the report, Plaintiff "was making rational and realistic plans for [the] future" and "[g]ained some insight into her substance abuse as well as compliance with treatment."  (*Id.*)

On January 26, 2011, Plaintiff reported that she felt "fine" and described her mood as stable.  (Tr. 789.)  Treatment notes from February 2011 reflect that Plaintiff's new medication was helping with her depression, that she had not smoked marijuana in a month, and that she was attending Alcoholics Anonymous (AA) meetings.  (Tr. 788.)  On February 9, 2011, Plaintiff's memory, attention, and concentration were intact, she denied any suicidal or homicidal thoughts, her thought content was at baseline, her cognitive functions appeared to be at baseline and without existing deficits, her insight was fair, and her judgment was good.  (Tr. 786.)

On May 16, 2011, Plaintiff reported feeling good because she met a man on the internet who was supposed to come visit her.  (Tr. 768.)  Plaintiff and Dr. Koenreich discussed how Plaintiff's positive thinking was reducing her symptoms of depression.  (*Id.*)  Dr. Koenreich noted that Plaintiff was making some improvement.  (*Id.*)

In July 2011, Plaintiff reported that she lacked energy and motivation.  (Tr. 760.)  She had not been able to reduce or quit smoking cigarettes and she had not been exercising.  (*Id.*)  Her affect was bright and she was talkative.  (*Id.*)

### b.  Agency Reports

On December 26, 2009, state agency psychologist Kristen Haskins, Psy.D., opined that Plaintiff was moderately limited in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining

5

attention and concentration for extended periods; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting.  (Tr. 627-628.)  Dr. Haskins concluded that Plaintiff would be capable of performing one- to three-step tasks, maintain attention for simple tasks, and interact with others on a superficial basis.  (Tr. 629.)  Dr. Haskins also opined that Plaintiff could adapt to a workplace setting that is routine and predictable and does not require a fast production pace or strict production demands.  (*Id.*)  She considered Plaintiff's statements to be partially credible.  (*Id.*)

On February 5, 2010, Dr. Haskins opined that Plaintiff had the mental residual functional capacity to understand, remember, and follow one- to three-step tasks; maintain attention for simple tasks; interact with others on a superficial basis; and adapt to a workplace setting that is routine and predictable and does not require a fast production pace or strict production demands.  (Tr. 678.)

### 2.    Physical Limitations

#### a.    Medical Reports

Plaintiff's primary care physician, Judith Furlong, M.D., examined Plaintiff in January 2010.  Plaintiff reported pain in her arms, hips, back, legs, and feet when she walks or stands.  (Tr. 669.)  She also reported that she walked for exercise.  (*Id.*)  She had full range of motion of all extremities, her gait was normal, and her mood and affect were pleasant and cooperative.  (Tr. 670.)  On May 10, 2010, Dr. Furlong prescribed a

walker for Plaintiff due to pain with weight-bearing and ambulation.  (Tr. 856-857.)

    **b.**    **Agency Reports**

On January 22, 2010, Plaintiff underwent a physical evaluation by R. Scott Lazzara, M.D.  (Tr. 645.)  Plaintiff reported a history of chronic obesity since 1993 and stated that she has tried multiple weight reduction programs on her own mostly by trying to stay active.  (*Id.*)  At the time of the examination, she weighed 339 pounds.  (*Id.*)  She complained of pain in her feet and knees and chronic fatigue.  (*Id.*)  Dr. Lazzara noted that Plaintiff could perform activities of daily living, including cooking and doing household chores.  (*Id.*)  She could also use the computer and watch TV.  (*Id.*)  She could sit for about 30 minutes, stand for about 5 minutes, and walk about a half block.  *Id.*)  She could lift about 10 pounds.  (*Id.*)

Dr. Lazzara noted that Plaintiff walked with a wide-based gait without the use of an assistive device.  (Tr. 646.)  Plaintiff had no difficulty getting on and off the examination table, mild difficulty heel and toe walking, moderate difficulty squatting, and was unable to hop.  (*Id.*)  Dr. Lazzara diagnosed obesity.  (Tr. 649.)  He stated that Plaintiff compensated with a wide-based gait but was relatively stable.  (*Id.*)  He noted that she had some mild crepitance in both patellar joints but no real joint destruction.  (*Id.*)  Dr. Lazzara concluded that Plaintiff should avoid exertional activities, working in temperature extremes or at unprotected heights, but could tolerate standing up to six to eight hours a day, as well as a sedentary position.  (*Id.*)

On March 6, 2011, state agency reviewing physician W. Jerry McCloud, M.D., opined that Plaintiff had the physical residual functional capacity to perform medium

7

work with occasional climbing of ladders, ropes, or scaffolds, and limited reaching in all directions.  (Tr. 680-685.)  According to Dr. McCloud, the clinical records showed that Plaintiff would be capable of performing far more than she alleged and that her statements were partially credible.  (Tr. 685.)

**C.      Hearing Testimony**

**1.      Plaintiff's Hearing Testimony**

At the time of Plaintiff's hearing, it had been four years since she last worked. (Tr. 42.)  She testified that she stopped working due to depression and the fact that she had gained a lot of weight.  (Tr. 43.)  She stated that she was forgetful and easily confused and became overwhelmed easily.  (*Id.*)  She had difficulty concentrating and staying on tasks.  (*Id.*)  She did not watch movies, but she could watch a half-hour television program.  (*Id.*)  She received treatment for her depression for several years. (Tr. 44.)  She took medication for her depression and mood swings.  (*Id.)*  The medications made her drowsy and she took a couple naps per day.  (Tr. 45.)

Plaintiff was using a walker at her hearing.  (*Id.*)  Due to her weight, she had knee pain when walking or sitting.  (*Id.*)  "If I sit too long, like, there at my computer, I get knee pain.  My feet hurt.  My ankles hurt.  My legs hurt."  (*Id.*)  She testified to using a walker for the past two years.  (*Id.*)  The walker was prescribed by Dr. Furlong, her primary care physician.  (*Id.*)  Without her walker, Plaintiff could stand for about five minutes.  (Tr. 46.)  After five minutes, her knees would become sore and she would feel like she was going to fall.  (*Id.*)  She could walk about a block without her walker.  (*Id.*) Plaintiff could sit for about twenty minutes before she would start to experience pains in

8

her knees, feet, and ankles.  (*Id.*)  Plaintiff took medication for her physical pains, and the medication did not cause her to experience any side effects.  (Tr. 47.)  She had a history of substance abuse.  (Tr. 47-48.)  At the time of her hearing, she had been sober for eight months.  (Tr. 48.)

Plaintiff visits with her friend about once a month, and sometimes her children come to see her.  (*Id.*)  Her son helps her with her grocery shopping and cleaning.  (Tr. 49, 51.)  Plaintiff spends about twenty minutes at a time on her computer checking Facebook or email.  (Tr. 49.)  She described her typical day as follows: "I get up and wake up and I start cleaning, play on the computer, take a nap and get up and do some more cleaning.  More computer.  Go to an AA meeting."  (Tr. 50.)  It takes her about an hour to do the dishes because she works for about five minutes at a time and then takes a break.  (Tr. 51.)

### 2.      Vocational Expert's Hearing Testimony

Alena Patenick, a vocational expert, testified at Plaintiff's hearing.  (Tr. 51.)  The VE noted that Plaintiff had past relevant work as a housekeeper (unskilled, light) and a cashier (unskilled, light).  (Tr. 52.)  The ALJ asked the VE to assume a hypothetical individual with the same age, education, and work experience as Plaintiff.  (*Id.*)  The individual is limited to sedentary work and may never climb ladders, ropes, or scaffolds, and may never balance.  (*Id.*)  The individual could occasionally stoop, crouch, kneel, or crawl and can frequently reach with both arms.  (*Id.*)  The individual can perform simple, routine, repetitive tasks and have only occasional interactions with the public.  (*Id.*)  The ALJ opined that the hypothetical individual could perform the following jobs: document

9

preparer (unskilled, sedentary) (over 19,000 jobs in Ohio and 200,000 nationally);

ticket-checker (unskilled, sedentary) (over 14,000 jobs in Ohio and 150,000 nationally);

and small parts assembler (sedentary) (over 21,000 jobs in Ohio and 225,000

nationally).  (Tr. 53.)

The ALJ then asked the VE to consider a hypothetical individual who was further

limited to only occasional interaction with co-workers.  (*Id.*)  The VE testified the

additional limitation would not erode the numbers she had previously given.  (*Id.*)

The VE further testified that an individual who would have to take two breaks per

day lasting an hour and a half in addition to regularly scheduled breaks would not be

able to sustain employment.  (*Id.*)  She also testified that the individual in the ALJ's first

hypothetical would not be able to perform her job duties with a walker.  (Tr. 53-54.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981).*  A claimant is considered

disabled when she cannot perform "substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott*

*v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).*  First, the claimant must demonstrate

that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    Plaintiff meets the insured status requirements of the Act through June 30, 2010.

2.    Plaintiff has not engaged in substantial gainful activity since September 26, 2009, the alleged onset date.

3.    Plaintiff has the following severe impairments: obesity; borderline intellectual functioning; attention deficit hyperactivity disorder; depression; and substance addiction disorder.

11

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance; occasional stoop, crouch, kneel, and crawl; frequent reaching and overhead reaching with both arms; able to remember and carry out one- to two-step instructions; able to perform simple, routine, repetitive tasks; and only occasional interaction with the public.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born in July 1964 and was 45-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  Plaintiff has a limited education and is able to communicate in English.

. . . . .

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Act, from September 26, 2009, through the date of this decision.

(Tr. 23-32.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of*

12

*Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.      Plaintiff's Assignments of Error**

**1.      The ALJ Improperly Evaluated Plaintiff's Need for a Walker.**

Plaintiff argues that the ALJ erred by determining that Plaintiff did not require a walker even though her treating physician prescribed one for her.  The Commissioner responds that the ALJ did not err, because other evidence in the record indicates that a walker was not medically necessary.  For the following reasons, Plaintiff's argument is well taken.

"The medical opinions and diagnoses of treating physicians are generally

13

accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).  Furthermore, it is well-established that administrative law judges may not make medical judgments.  *See Meece v. Barnhart,* 192 F.App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Here, the ALJ acknowledged that Dr. Furlong was Plaintiff's treating physician. (Tr. 27, 29.)  In May 2010, Dr. Furlong prescribed Plaintiff a walker due to pain with weight-bearing and ambulation.  (Tr. 856-857.)  Plaintiff testified that she used her walker any time she had to walk, but that she could walk up to five minutes without it. (Tr. 46-47.)  The ALJ concluded that "the walker may not be medically necessary for the claimant."  (Tr. 29.)  In making this determination, the ALJ noted that four months before Dr. Furlong prescribed the walker, Dr. Lazzara reported that Plaintiff walked with a wide-based gait without the use of an assistive device, and Dr. Furlong reported that Plaintiff's gait was normal and her power and tone were strong.  (Tr. 27, 646, 669.)  The ALJ also stated that almost a year after Dr. Furlong prescribed Plaintiff's walker, Dr. Furlong noted that Plaintiff's gait was normal, her power and tone were strong, her

14

lumbosacral spine was non-tender to palpation, and she exhibited a full range of motion in all extremities.  (Tr. 29, 841.)  Furthermore, the ALJ noted that at Plaintiff's hearing, she testified that without her walker, she could stand for five minutes and walk a city block.  (Tr. 27, 46.)  Based on this evidence, the ALJ concluded that "the objective signs and findings do not show that the walker is medically necessary."  (Tr. 27.)

    While it was proper for the ALJ to evaluate Dr. Furlong's findings in comparison with the other evidence of record, the ALJ erred in finding that Dr. Furlong's prescription for Plaintiff's walker was not medically necessary.  This Court finds that under the facts of the instant case, Dr. Furlong's opinion that Plaintiff required a walker – as evidenced in a prescription signed by Dr. Furlong and dated 5/10/10 – was a medical opinion that the ALJ did not have the expertise or authority to override in the absence of medical expert testimony to the contrary.  The ALJ determined that Plaintiff did not require a walker, because treatment notes from Dr. Furlong before and after he prescribed the walker tended to show that Plaintiff did not require an assistive device.  (Tr. 27, 29.)  The ALJ purports to assume that an individual with a normal or wide-based gait and "strong power and tone" would not require an assistive device.  (Tr. 27, 29.)  The ALJ does not address the idea that a walker could be used to relieve pain.  This is especially relevant here, because Dr. Furlong's prescription specifically noted that he prescribed the walker due to Plaintiff's pain in her arms, hips, back, legs, and feet due to weight-bearing and ambulation.  (Tr. 857.)

    Furthermore, the ALJ did not address the fact that when Dr. Furlong prescribed the walker, Plaintiff weighed thirty pounds more than she did at the time Dr. Lazzara reported that Plaintiff walked with a wide-based gait without the use of an assistive

device.  As Plaintiff addresses in her Brief on the Merits, "Social Security recognizes that obesity can have a significant impact on a person's ability to engage in work activity."  (Plaintiff's Brief ("Pl.'s Br.") at 9.)  The Social Security Administration ("SSA") considers obesity to be a medically determinable impairment.  S.S.R. 02-1p, Introduction, 2000 WL 628049, at *1 (S.S.A.).

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

Id. at *6.  As Plaintiff argues in her Brief, "[t]hat four months before the walker was prescribed another examiner noted only a 'wide-based' gait does not undermine the treating physician's prescription.  At the time the consultative examiner examined Ms. Zernhel, she weighed 339 pounds.  Tr. 646.  Four months later, when Dr. Furlong prescribed the walker, Ms. Zernhel weighed almost 30 pounds more than this. . . ." (Pl.'s Br. 4.)  Thus, the ALJ's finding that "the objective signs and findings do not show that the walker is medically necessary" is misplaced, as the ALJ did not consider Plaintiff's weight gain when comparing Dr. Furlong's prescription for a walker with previous medical evidence.

In finding that Plaintiff did not require a walker, the ALJ also considered Plaintiff's testimony that she could stand for five minutes and walk a city block without her walker.  (Tr. 27.)  The ALJ purports to assume that because Plaintiff admitted to walking without her walker at times, her walker was never necessary.  The ALJ limited Plaintiff to

16

sedentary work, which is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally[2] and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  While sedentary work involves only occasional walking or standing, the ALJ does not explain how – or if – a limitation to sedentary work accommodates Plaintiff's ability to stand for only five minutes without her walker.  Instead, the ALJ assumes that because Plaintiff testified that she could stand for up to five minutes and walk a city block without her walker, Plaintiff would be capable of performing sedentary work without any additional restrictions on standing or walking.  The ALJ fails to recognize that Plaintiff's ability to walk without her walker does not necessarily mean that the walker is unnecessary.

It was inappropriate for the ALJ to substitute her opinion for the opinion of a medical professional to find that a prescription signed by a physician – in this case a prescription for a walker – was not medically necessary.  For the ALJ to determine that Plaintiff did not require a walker and therefore could perform sedentary work without any additional limitations on standing or walking, she should have provided support from the testimony of a medical expert qualified to render medical opinions.  Not only did the ALJ inappropriately

---

[2]    "'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Sitting would generally total about 6 hours of an 8-hour workday."  SSR 96-9P (S.S.A July 2, 1996).

substitute her own opinion for that of a physician, her stated reasons for finding that Plaintiff did not require a walker were unpersuasive: The ALJ did not acknowledge the fact that Dr. Furlong prescribed the walker due to Plaintiff's pain rather than an inability to ambulate effectively, nor did the ALJ address how Plaintiff's obesity may have played a role in her need for a walker. Furthermore, while Plaintiff indicated that she did not need her walker one-hundred percent of the time, the ALJ mistook this to mean that Plaintiff did not require the use of a walker at all. For the foregoing reasons, Plaintiff's case is remanded to the ALJ for further consideration of Plaintiff's functional capabilities in relation to her use of a walker. Since Plaintiff testified that she can stand or walk for a limited amount of time without her walker, the main issue for the ALJ to address on remand is whether a more restrictive RFC can accommodate Plaintiff's use of a walker. In the alternative, should the ALJ again opine that Plaintiff does not require a walker, she must find support for this opinion from a medical expert.

**2.    The ALJ's Residual Functional Capacity Finding Does Not Adequately Account for Plaintiff's Mental Limitations.**

Plaintiff argues that the ALJ inadequately accounted for her mental limitations. Specifically, Plaintiff takes issue with the ALJ's assessment of the opinions of the state agency psychological consultants who found that Plaintiff was limited to interaction with others on a superficial basis and to a workplace setting that does not require a fast production pace or strict production demands. For the following reasons, Plaintiff's argument is well taken.

State agency medical and psychological consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security

18

disability evaluation." 20 C.F.R. § 404.1527.  Administrative law judges are not bound by any findings made by State agency medical or psychological consultants.  *Id.*  Unless the ALJ gives a treating source's opinion controlling weight, the ALJ must explain the weight given to the opinions of state agency medical consultants.  *Id.*

Here, the ALJ noted that she considered the opinions of the state agency psychological consultants who concluded, *inter alia,* that Plaintiff could interact with others only on a superficial basis and that Plaintiff could adapt to a workplace setting that did not require a fast production pace or strict production demands.  (Tr. 30, citing Tr. 629, 678.) The ALJ afforded those opinions "some weight" and then noted that she accommodated the opinions "by limiting the claimant to remembering and carrying out one- to two-step instructions, performing simple, routine, repetitive tasks and only occasional interaction with the public."  (*Id.*)  Plaintiff argues that the ALJ's RFC determination did not adequately account for the limitations assessed by the state agency consultants, because the ALJ did not limit Plaintiff to superficial interactions with the public and did not include a limitation addressing pace and production demands in the workplace.

The ALJ erred by failing to include a limitation for time and production pressures in Plaintiff's RFC.  State agency consultant Dr. Haskins opined in 2009 that Plaintiff "can adapt to a workplace setting that is routine and predictable and does not require a fast production pace or strict production demands."  (Tr. 629.)  In 2010, Dr. Haskins offered the same conclusions.  (Tr. 678.)  Thus, evidence in the record supports a finding that Plaintiff could not perform jobs with strict time or production pressures.  Restricting a claimant to simple tasks and static work duties – as the ALJ did here – does not necessarily address the claimant's inability to perform jobs with strict time or production pressures.  Plaintiff cites

to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support her contention that the ALJ's RFC does not sufficiently address the speed- and pace-based restrictions assessed by Dr. Haskins.  In *Ealy*, the record showed that the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks. *Ealy*, 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations.  Accordingly, the Sixth Circuit found that the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace. *Id.*

*Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions. *Id.* at 517.  However, *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) (Boyko, J.).  Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.* at 4.

Here, the record supports Plaintiff's contention that the ALJ erred by failing to incorporate speed- and pace-based restrictions into her RFC determination.  Plaintiff has pointed to evidence in the record from state agency consultant Dr. Haskins showing that

20

Plaintiff requires restrictions relating to pace and production demands.  The ALJ noted that she gave such evidence "some weight,"[3] but she did not explain why her RFC finding omitted speed- and pace-based restrictions altogether.  Instead, the ALJ purports to have believed that she accommodated those restrictions by limiting Plaintiff to one- to two-step instructions and simple, routine, repetitive tasks.  (Tr. 30.)  Because restricting a claimant to simple tasks and static work duties does not necessarily address the claimant's inability to perform jobs with strict time or production pressures, Plaintiff's argument that the ALJ's RFC did not adequately account for Plaintiff's mental limitations presents a basis for remand.  On remand, if the ALJ concludes that Plaintiff does not require additional speed- and pace-based restrictions, she must explain what evidence in the record she relies upon to reject the state agency consultant opinions that found such a limitation.  Furthermore, the ALJ is directed to explain whether, in addition to being limited to only occasional interaction with the public, Plaintiff must also be restricted to only *superficial* interaction with the public.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

**IT IS SO ORDERED**.

                                              s/ *Nancy A. Vecchiarelli*
                                              U.S. Magistrate Judge

Date: December 2, 2013

---

[3]      The ALJ noted: "I afford these opinions some weight because they account for the degree of limitation, which the claimant's impairments cause and are generally consistent with the medical evidence of record." (Tr. 30.)